## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MICHAEL GRAYSON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | **No. 06-2375-KHV** |
| STATE OF KANSAS, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

Michael Grayson brings suit against the State of Kansas, state probation supervisor Krisha Krumroy, the Unified Government of Wyandotte County/Kansas City, Kansas ("Unified Government") and Sheriff Leroy Green, Jr., alleging violations of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 and negligence under state law. This matter comes before the Court on the Motion For Summary Judgment (Doc. #128) which the Unified Government and Sheriff Green filed July 30, 2007, and Defendants State Of Kansas And Krisha Krumroy's Motion For Summary Judgment (Doc. #130) also filed July 30, 2007. For reasons stated below, the Court sustains the motions.

### Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).

## Factual Background

The following material facts are uncontroverted, deemed admitted or, where disputed, viewed in the light most favorable to plaintiff.

On April 17, 2002, in the circuit court of Jackson County, Missouri, plaintiff entered a plea of guilty to unlawful use of a weapon. The court sentenced him to three years on probation. On December 16, 2002, plaintiff applied to the Missouri Department of Corrections for permission to reside in the State of Kansas and have Kansas authorities supervise his probation under the Interstate Compact for

Adult Offender Supervision ("ICAOS"), K.S.A. § 22-4110 et seq.; Mo. Rev. Stat. § 589.500 et seq.  The same day, the Missouri Department of Corrections approved plaintiff's application.  Some time after October 22, 2003, Krisha Krumroy – a state parole officer in the Kansas City, Kansas parole office – assumed supervision of plaintiff's probation.  On September 29, 2004, Krumroy issued an order to arrest and detain plaintiff which alleged that in violation of his probation, plaintiff had "engaged in assaultive activities" against F.H. on September 24, 2004.[1]  That same day, police officers in Kansas City, Kansas arrested plaintiff and transported him to the detention center in Wyandotte County, Kansas.[2]  Plaintiff remained in custody in Wyandotte County until Kansas authorities released him to Missouri authorities under the ICAOS on March 23, 2005.

On October 7, 2004, the Kansas Department of Corrections conducted a preliminary hearing which found probable cause to support the alleged violation of plaintiff's probation.  Krumroy prepared and submitted an "Offender Violation Report" on October 21, 2004, which detailed the violation and the probable cause finding, and stated that "[a]t this time the State of Kansas is requesting that state of Missouri issue a warrant for the offender's arrest and that he be required to appear in front of the judge to address these violations."  On November 8, 2004, the probation officer in Kansas City, Missouri received the violation report.[3]  The same day, Missouri probation officer Patricia Meade prepared a

---

[1]    Krumroy had previously imposed restrictions on plaintiff's contact with F.H., who is the mother of one of his children.  Krumroy issued the order to arrest and detain plaintiff "[p]ursuant to the Kansas Statutes Annotated, 75-5217 or 22-3716."  The listed expiration date of the order was October 29, 2004.

[2]    Leroy Green, Jr., is the Wyandotte County sheriff and is charged with operation of the Wyandotte County detention center.

[3]    At the time of plaintiff's detention, this 18-day delay was typical of the communication process between Kansas and Missouri, which relied solely on paper records sent by traditional mail.  Under ICAOS policy, local parole offices could not communicate directly with out-of-state parole
(continued...)

"Response To Violation Report" which acknowledged receipt of the violation report and requested additional information, including police reports and charges.[4] The response indicated that the Missouri probation office would determine necessary court action after receiving the requested information.[5] On November 12, 2004, Krumroy issued to the Wyandotte County detention center a second order to arrest and detain plaintiff. This order had a listed expiration date of December 12, 2004. On December 15, 2004, Meade re-submitted to the Jefferson City parole office her request for additional information from the State of Kansas regarding plaintiff's alleged probation violation.

On January 11, 2005, Kansas parole supervisor Don Schwartz faxed directly to the Jefferson City probation office a second copy of the violation report which Krumroy had prepared. Meade received the second copy of the report the next day. On January 14, 2005, Meade prepared a second "Response To Violation Report" which acknowledged receipt of the violation report dated October 21, 2004, again requested additional information regarding plaintiff's alleged probation violation (including police reports and charges, and, for the first time, a copy of the probation directive that plaintiff not engage in assaultive activities). Meade's response stated that "[i]f no charges are filed, Mo will not issue warrant." The same day, Krumroy issued to the Wyandotte County detention center a third order to arrest and

---

[3](...continued)
offices. Instead, local offices were required to submit paperwork to their state compact office, which then sent the paperwork to the state compact office of the out-of-state parole office, which finally sent the paperwork to its local parole office. Here, this policy meant that communications between the parole offices in Kansas City, Kansas and Kansas City, Missouri traveled from Kansas City, Kansas, to Topeka, Kansas, to Jefferson City, Missouri, to Kansas City, Missouri, and vice-versa.

[4]        Meade testified that pursuant to the communication policy described above, she submitted her responses to violation reports to the state compact office in Jefferson City, Missouri for transmission to the State of Kansas.

[5]        At the time of plaintiff's detention, some Missouri probation officers chose to gather all possible information before presenting the case to the court. Such a practice was not uncommon.

detain plaintiff.  This order had a listed expiration date of February 13, 2005 and noted that "[w]e are still waiting on a response from Missouri DOC on this offender."[6]

In early to mid-January of 2005, Joy Vasos, a Wyandotte County detention center classification technician, spoke with plaintiff and learned that a Missouri probation officer had informed him that the State of Missouri was waiting for Krumroy to send a "pick-up" report.  On January 19, 2005, Vasos relayed this information to Schwartz via email.  The next day, Schwartz responded that the Kansas probation office had sent the State of Missouri all of its materials regarding plaintiff and that Missouri had everything it needed to address plaintiff's detention.  Vasos forwarded her email exchange with Schwartz to classification supervisor Tamara Jefferies.  Shortly thereafter, Jefferies called Schwartz, who told her "that's just the way it works when you deal with Missouri and it is just a mess."  Jefferies and Vasos continued to call Schwartz on a weekly basis to inquire about plaintiff's status.  Meade described the system of communication between the probation offices at the time of plaintiff's detention as "poor."

On February 10, 2005, Missouri probation officer Abby McAdams assumed responsibility for Meade's workload for eight weeks while Meade took maternity leave.  On February 17, 2005, McAdams prepared a "Response To Violation Report" which stated that "[w]e are in receipt of your violation report dated 10-21-04.  We apologize for the delay in responding to your violation."  The response again requested copies of police reports, charges and the probation directive that plaintiff not engage in

---

[6]     The parties have identified three orders for arrest and detention which Krumroy filed against plaintiff, including order number 04-223 (effective September 29, 2004 to October 29, 2004), order number 04-251 (effective November 12, 2004 to December 12, 2004), and order number 05-011 (effective January 14, 2005 to February 13, 2005).  Order number 05-011 references another order, however, requesting that the Wyandotte County detention center "[p]lease lodge this warrant [number 05-011] as a replacement for warrant #04-267 that expires this date."  Apparently, the Kansas Department of Corrections filed a fourth order for arrest and detention which is missing from the record.

assaultive activities. For the first time, Missouri also requested the probation directive that plaintiff have no contact with F.H. One week later, on February 24, 2005, Krumroy received the response.[7] On March 3, 2005, Jefferies contacted Timothy Wolfe, Missouri parole and probation district administrator. Wolfe informed Jefferies that Missouri had made three requests for additional information from the parole office in Kansas City, Kansas which had not been answered. Shortly thereafter, Jefferies contacted Krumroy, who told Jefferies that she had received Missouri's response dated February 17, 2005, and would forward the necessary paperwork to Wolfe. Jefferies contacted Wolfe later that day to inform him that the paperwork would be forthcoming.

On March 4, 2005, the parole office in Kansas City, Kansas faxed to Wolfe the additional information on plaintiff's probation violation. The same day, McAdams prepared a field violation report which informed the supervising court of the circumstances of plaintiff's detention and recommended that it issue a capias warrant to bring plaintiff to Missouri.[8] On March 11, 2005, the Jackson County circuit court issued a warrant for plaintiff's arrest. On March 18, 2005, Schwartz sent Wyandotte County warrant clerk Kathy Crabtree documentation which confirmed that Missouri had issued a warrant for plaintiff's arrest and requested that she arrange plaintiff's extradition to Missouri. Schwartz also sent Crabtree a copy of plaintiff's ICAOS application which included a waiver of his right to contest extradition to Missouri. Crabtree then sent an email to Jefferies which stated, "I have received paperwork from Don Schwartz today to release [plaintiff] to Mo. I have sent a msg. to Mo. to transport..." On March 23, 2005, the Wyandotte County detention center released plaintiff into the

---

[7]     Krumroy testified that the violation report dated February 17, 2005 was the first paperwork that she received from the State of Missouri regarding plaintiff's detention.

[8]     The police department in Jackson County, Missouri will not extradite an individual from another jurisdiction without a capias warrant.

custody of Missouri officials.[9]  Kansas did not charge plaintiff with any crime arising from the acts which formed the basis of the alleged probation violation.  On March 29, 2005, McAdams amended her field violation report to recommend that plaintiff's probation be discharged and that he be released.  On March 31, 2005, the Jackson County circuit court discharged plaintiff from probation.

Plaintiff claims that Sheriff Green and the Unified Government violated his right to due process under the Fourteenth Amendment by detaining him without a valid warrant or arrest order.  Sheriff Green seeks summary judgment on the basis of qualified immunity.  The Unified Government argues that it is entitled to summary judgment because plaintiff cannot establish a constitutional violation necessary to trigger municipal liability under Section 1983.

Plaintiff claims that Krumroy and the State of Kansas (1) violated his right to due process under the Fourteenth Amendment by detaining him without a valid warrant or arrest order and without a final probation revocation hearing; (2) violated his right to be free from unreasonable seizure under the Fourth Amendment by detaining him for an unreasonable length of time; and (3) negligently failed to communicate with the State of Missouri regarding his detention or release him after a reasonable time.  Krumroy seeks summary judgment on plaintiff's Section 1983 claim on the basis of qualified immunity.  The State of Kansas argues that it is entitled to summary judgment on plaintiff's Section 1983 claim because it is not a "person" who may be sued under that statute.  On plaintiff's negligence claim, Krumroy and the State of Kansas seek summary judgment that (1) they owed no duty to plaintiff; (2) they are entitled to discretionary immunity under the Kansas Tort Claims Act, K.S.A. § 75-6101 et seq.; and (3) the claim is time-barred.

---

[9]  On February 18, 2005, plaintiff had filed a habeas corpus action challenging his detention.  On March 29, 2005, the district court of Wyandotte County dismissed this action as moot in light of his release from custody in the State of Kansas.

## Analysis

**I.     Plaintiff's Claim Against Sheriff Leroy Green, Jr.**

Plaintiff claims that Sheriff Green violated his right to due process under the Fourteenth Amendment by detaining him without a valid warrant or arrest order.[10]  Sheriff Green argues that he is entitled to summary judgment on the basis of qualified immunity.

Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Gross v. Pirtle, 245 F.3d 1151, 1155 (10th Cir. 2001) (quoting Malley v. Briggs, 475 U.S. 335, 341(1986)).  Once qualified immunity has been raised, plaintiff bears the heavy burden of establishing that (1) defendant's actions violated a constitutional or statutory right and (2) the right was "clearly established" at the time of the relevant conduct. Serna v. Colo. Dep't of Corr., 455 F.3d 1146, 1150 (10th Cir. 2006) (citing Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001)).  If plaintiff satisfies this two-part burden, defendant must demonstrate that his actions were objectively reasonable in light of the law and the information he possessed at the time of the claimed violation.  See Martin v. Bd. of County Comm'rs, 909 F.2d 402, 405 (10th Cir. 1990).

---

[10]      Plaintiff does not specifically indicate whether he asserts a procedural or substantive due process claim.  Because plaintiff argues that Sheriff Green did not release him in accordance with the law, he appears to complain of a procedural due process violation.  Were the Court to construe his allegations as a substantive due process claim, plaintiff would be required to demonstrate a high level of outrageousness in Sheriff Green's conduct and a magnitude of potential or actual harm which is truly conscience shocking.  See Uhlrig v. Harder, 64 F.3d 567, 574 (10th Cir. 1995).  Because plaintiff makes no argument that Sheriff Green's alleged conduct shocks the Court's conscience, and the record contains no evidence from which the Court might find that it does, a substantive due process claim would fail as a matter of law.

Qualified immunity will only relieve defendant of individual liability.[11]  Harlow, 457 U.S. at 818.

Plaintiff claims that Sheriff Green violated his right to due process by failing to release him once the original arrest and detain order expired on October 29, 2004.  Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the due process clause of the Fourteenth Amendment.  Mathews v. Eldridge, 424 U.S. 319, 332 (1976).  The essence of procedural due process is fair play, Patrick v. Miller, 953 F.2d 1240, 1244 (10th Cir. 1992), and the fundamental due process requirement is the opportunity to be heard "at a meaningful time and in a meaningful manner," Mathews, 424 U.S. at 333.

The loss of liberty inherent in probation revocation requires that probationers be accorded due process.  Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973); Morrissey v. Brewer, 408 U.S. 471, 482 (1972).  Probationers, however, enjoy only conditional liberty and its attendant rights, distinct from the absolute liberty afforded ordinary citizens and the full panoply of rights due those subject to criminal prosecution.  Morrissey, 408 U.S. at 480.  At a minimum, due process requires a preliminary revocation hearing "as promptly as convenient" after arrest, and a final revocation hearing "within a reasonable time" after the probationer is taken into custody.  See Paul v. McFadin, 117 F.3d 1428 (Table), 1997 WL 407843, at *2 (10th Cir. July 21, 1997) (quoting Morrissey, 408 U.S. at 485, 488).

While on probation granted by the State of Missouri, plaintiff was considered a "released inmate" under Kansas law for purposes of supervision in the State of Kansas.  See K.S.A. § 75-5217(h).  The record reflects that Krumroy issued the arrest and detain order of September 26, 2004 pursuant to

---

[11]     The Court previously dismissed plaintiff's official capacity claims against Sheriff Green as redundant of his claims against the State of Kansas and the Unified Government, see Memorandum And Order (Doc. #112) filed June 4, 2007 at 7-8, leaving only plaintiff's individual capacity claims. A successful assertion of qualified immunity would therefore completely absolve Sheriff Green of liability.

Section 75-5217, which authorizes the arrest of released inmates for violations of conditions of release as follows:

> Any parole officer may arrest such released inmate without a warrant, or may deputize any other officer with power of arrest to do so by giving such officer a written arrest and detain order setting forth that the released inmate, in the judgment of the parole officer, has violated the conditions of the inmate's release.  The written arrest and detain order delivered with the released inmate by the arresting officer to the official in charge of the institution or place to which the released inmate is brought for detention shall be sufficient warrant for detaining the inmate.  After making an arrest the parole officer shall present to the detaining authorities a similar arrest and detain order and statement of the circumstances of violation.  Pending a hearing, as provided in this section, upon any charge of violation the released inmate shall remain incarcerated in the institution or place to which the inmate is taken for detention.

K.S.A. § 75-5217(a).  Plaintiff concedes the validity of the order and Sheriff Green's authority to detain him on the basis of that order.  Under Kansas law, a sheriff is required to receive and keep individuals arrested under Section 75-5217 "until discharged in accordance with law or until otherwise ordered by the secretary of corrections."  K.S.A. § 19-1930(b).  Plaintiff argues that Sheriff Green should have discharged him in accordance with law once the arrest and detain order expired on October 29, 2004.  Plaintiff cites no authority for this proposition.[12]

By its express language, Section 75-5217(a) compelled Sheriff Green to detain plaintiff pending a hearing on the alleged probation violation.  The record reflects that the Kansas Department of Corrections afforded plaintiff a prompt preliminary hearing on October 7, 2004 which found probable cause to support the alleged probation violation.  Under Morrissey, this probable cause finding is sufficient to warrant continued detention pending a final revocation hearing.  408 U.S. at 487; see also

---

[12]    Plaintiff apparently assumes that the expiration date listed on the arrest and detain order set the maximum length of his detention.  He cites no authority for this proposition, and the Court notes that Section 75-5217 does not contain any language which mandates an expiration date on the order or describes the effect of such a date.  Arguably, the expiration date set the deadline for authorities to execute the order (i.e. arrest plaintiff) without limiting the potential period of detention.

Parker v. Kansas, 247 Kan. 214, 215-16, 795 P.2d 68, 70 (1990) (applying Morrissey principles to parolee due process claim). The probable cause finding, by itself, justified plaintiff's continued detention. The expiration of the arrest and detain order therefore had no bearing on Sheriff Green's ability to legally detain plaintiff. In other words, the probable cause determination replaced the arrest and detain order as the authority on which Sheriff Green detained plaintiff, and plaintiff cannot complain that Sheriff Green failed to immediately release him when the arrest and detain order expired on October 29, 2004.[13]

Once plaintiff received a preliminary hearing which found probable cause to support the alleged probation violation, he was entitled to a final revocation hearing within a reasonable time. Morrissey, 408 U.S. at 488. Plaintiff does not specifically claim that Sheriff Green violated his due process rights by denying him a final hearing within a reasonable time. Even if the Court construed plaintiff's arguments to assert such a claim, however, the record contains no evidence that Sheriff Green had any control over Missouri's process to retake plaintiff under the ICAOS for purposes of the final revocation hearing.[14] Under ICAOS rules, the State of Kansas – not the municipal government – is responsible for

---

[13]    Plaintiff suggests that if authorities are permitted to detain probationers past the expiration date of the arrest and detain order without a subsequent order to continue the detention, probationers may be held in perpetuity. This is obviously not the case. Morrissey outlines the due process entitlements which are designed to ensure the reasonably expeditious movement of probationers through their revocation proceedings.

[14]    The ICAOS defines "retaking" as "the act of a sending state in physically removing an offender, or causing to have an offender removed, from a receiving state." ICAOS Rule 1.101 (2003). Although the ICAOS rules in effect at the time of plaintiff's detention did not explicitly provide that the sending state had sole authority to conduct the final revocation hearing, the Court presumes that the State of Missouri – as the state which granted plaintiff probation – would be required to determine whether the probation should be revoked. The current version of the ICAOS rules makes this clear. See ICAOS Rule 5.108(f) (2007) (after probable cause determination, receiving state must hold offender pending sending state decision to retake offender).

reporting alleged probation violations and the State of Missouri maintains discretion to commence

retaking procedures.  See ICAOS Rule 4.109 (2003) (receiving state shall notify sending state of

probation violations); ICAOS Rule 5.101 (2003) (with limited exception, sending state maintains sole

discretion to commence retaking procedures against probationer alleged to have violated conditions of

release); see also ICAOS Op., No. 2-2005, at 4 (Mar. 4, 2005) ("[I]n supervising out-of-state offenders,

officials in the receiving state are not acting exclusively as authorities of that state . . . but are also acting

as agents of the sending state and are, therefore, to a certain degree controlled by the decisions of the

sending state officials.").  Without any meaningful involvement in the retaking process under the

ICAOS, Sheriff Green cannot be held constitutionally liable for the delay in that process which resulted

in plaintiff's continued detention.[15]  See Scull v. New Mexico, 236 F.3d 588, 598 (10th Cir. 2000)

(defendant without authority to initiate extradition proceedings entitled to qualified immunity on claim

for violation of right to timely extradition process).

Because Sheriff Green was not required to release plaintiff at the expiration of the arrest and

detain order, and had no control over retaking procedures, plaintiff has not established that Sheriff Green

violated his right to due process by not releasing him from custody on October 29, 2004.  The Court

therefore finds that Sheriff Green is entitled to summary judgment on the basis of qualified immunity.

## II.    Plaintiff's Claim Against The Unified Government

Like Sheriff Green, plaintiff claims that the Unified Government violated his right to due process

---

[15]    Even if Sheriff Green had authority to initiate retaking procedures against plaintiff, or could otherwise be held responsible to the delay in affording plaintiff a final revocation hearing, Morrissey demands only a final revocation hearing within a reasonable time after arrest.  Plaintiff makes no argument why six months would be unreasonable under the circumstances of the case, and the Court will not construct such arguments for him.  See Schelin v. Haun, 92 Fed. Appx. 688, 691 (D. Kan. 2004) (citing Drake v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991)).

under the Fourteenth Amendment by detaining him without a valid warrant or arrest order.  Although plaintiff makes no distinction between Sheriff Green and the Unified Government, his claim against the Unified Government necessarily asserts municipal liability.  Under Section 1983, municipal liability must be predicated on an employee's underlying constitutional violation.  See Myers v. Okla. County Bd. of County Comm'rs, 151 F.3d 1313, 1316-17 (10th Cir. 1998) (regardless of governmental policies, local government entity cannot conceivably be liable where officers inflict no constitutional harm).  Because plaintiff has created no genuine issue of material fact whether Sheriff Green violated his right to due process, the Unified Government is entitled to summary judgment on plaintiff's claim.

**III.   Plaintiff's Claims Against Krisha Krumroy**

Plaintiff claims that Krumroy (1) violated his right to due process under the Fourteenth Amendment by detaining him without a valid warrant or arrest order and without a final probation revocation hearing; (2) violated his right to be free from unreasonable seizure under the Fourth Amendment by detaining him for an unreasonable length of time; and (3) negligently failed to communicate with the State of Missouri regarding his detention.

**A.   Due Process**

Plaintiff claims that Krumroy was responsible for his detention, which lasted an unreasonably long time without a valid arrest order or final revocation hearing in violation of his right to due process under the Fourteenth Amendment.  Krumroy argues that she is entitled to summary judgment on the basis of qualified immunity.

To the extent that plaintiff's due process claim is premised on the argument that Krumroy caused his detention without a valid warrant, plaintiff has conceded that the initial arrest and detain order was facially valid and the Court has already determined that prior to the expiration of the order, the probable

cause finding on October 7, 2004 created valid authority for the State of Kansas and Sheriff Green to detain plaintiff. Plaintiff's due process claim against Krumroy is therefore limited to the argument that Krumroy prevented him from receiving a timely final revocation hearing.

As noted above, due process requires that a probationer receive a final revocation within a reasonable time after arrest. Morrissey, 408 U.S. at 488. Plaintiff argues that Krumroy was responsible for the delay of approximately six months between his arrest and the discharge of his probation because (1) she filed an insufficient violation report and (2) did not timely provide required information regarding plaintiff's alleged violations – which Missouri officials requested three times – until March of 2005. Although plaintiff argues that Krumroy did not provide full information in her violation report, he does not specifically identify which information was missing. Presumably, plaintiff is referring to the police reports, filed charges and probation directives which Missouri officials requested in response to the violation report. Contrary to plaintiff's argument, however, ICAOS rules do not mandate that such information be included in the violation report.[16] Here, Krumroy's violation report included all

---

[16]      The ICAOS rules set forth the required contents of the violation report as follows:

A violation report shall contain–
      (1) offender's name and location;
      (2) offender's state-issued identifying numbers;
      (3) date of the offense or infraction that forms the basis of the violation;
      (4) description of the offense or infraction;
      (5) status and disposition, if any, of offense or infraction;
      (6) dates and descriptions of any previous violations;
      (7) receiving state's recommendation of actions sending state may take;
      (8) name and title of the officer making the report; and
      (9) if the offender has absconded, the offender's last known address and telephone number, name and address of the offender's employer, and the date of the offender's last personal contact with the supervising officer.

ICAOS Rule 4.109(b).

of the information required by ICAOS rules.

Further, even if Krumroy was obligated to provide additional information upon request, the record contains no evidence that Krumroy actually received the two requests which Meade submitted in response to the violation report in November of 2004 and January of 2005. Krumroy testified that she did not receive the responses, and her testimony is supported by the notation – "we are still waiting on a response from Missouri DOC on this offender" – which she made on the third arrest and detain order dated January 14, 2005. Even assuming that Meade prepared the responses to the violation report and submitted those responses to the state compact office in Jefferson City, Missouri (which the record supports), the record contains no evidence that the responses were ever sent from Jefferson City to Topeka or from Topeka to Krumroy at the parole office in Kansas City, Kansas. Absent such evidence, even viewing the record in the light most favorable to plaintiff, plaintiff has not created a genuine issue of material fact whether Krumroy even received the first two requests for additional information. Plaintiff's argument that Krumroy caused his unreasonable detention by not responding to the two requests must therefore fail as a matter of law.[17]

In the alternative, plaintiff argues that even if Krumroy did not receive the first two requests, she was constitutionally required to release him after he had been held for an unreasonable length of time without a response from the State of Missouri. As noted above, Kansas authorities detained plaintiff for approximately six months from his arrest on September 29, 2004, until his release to the State of Missouri in late March of 2005. The Tenth Circuit has recognized that a delay of four and one-half

---

[17]      Krumroy received the third request for additional information in late February of 2005 and forwarded the requested information to Missouri in early March of 2005. As noted above, plaintiff was subsequently returned to the State of Missouri and the court discharged his probation on March 31, 2005. The Court finds nothing unreasonable in Krumroy's actions after she received the third request.

months may be unreasonable under certain circumstances. <u>McNeal v. United States</u>, 553 F.2d 66, 68 (10th Cir. 1977). <u>McNeal</u>, however, held that "delay, per se, does not constitute a violation of due process . . . where the parolee has finally been afforded the revocation hearing and the facts of the violation fairly adjudicated." <u>Id.</u> To establish a due process violation, plaintiff must show that the delay, under the totality of the circumstances, prejudiced his ability to defend the violation.[18] <u>Id.</u>

Here, plaintiff does not argue that the delay interfered with his ability to call witnesses or present evidence, or otherwise prejudiced his ability to defend the alleged violations at the hearing which he ultimately received in Jackson County. He also does not challenge the fairness of that final revocation hearing. Under these circumstances, plaintiff cannot establish any due process violation because "[e]ven if the delay was unjustified, that fact alone is of no help . . . if finally a fair hearing was held which

---

[18]    <u>McNeal</u> applied this prejudice requirement in the context of a habeas corpus action. <u>See</u> 553 F.2d at 68. Plaintiff argues that the prejudice requirement does not apply in a Section 1983 action where the complainant has been released from custody and seeks money damages. Although the Court agrees that application of the prejudice element appears to lose much of its appeal after an individual is released from custody without threat of future proceedings, the Tenth Circuit has nonetheless applied the prejudice element under such circumstances. <u>See</u> <u>White v. Braley</u>, 172 F.3d 880 (Table), 1999 WL 107106, at *1-2 (10th Cir. Feb. 26, 1999) (due process claim for money damages under Section 1983 infirm because plaintiff failed to allege that four-month delay was actually prejudicial).

Plaintiff attempts to distinguish <u>White</u> by arguing that plaintiff in that case received a final revocation hearing, while he did not. As noted above, once plaintiff returned to Missouri, the Jackson County circuit court discharged his probation. Under Missouri law, the circuit court has jurisdiction to control the term of probation through revocation, discharge or extension. Mo. Rev. Stat. § 559.036(2). Here, the circuit court order reflects that plaintiff went before the circuit court, and after reviewing the case file and hearing statements of the parties, that court discharged plaintiff's probation. Because the circuit court originally granted plaintiff's probation, its order discharging the probation constitutes the final revocation hearing for purposes of due process. <u>See</u> <u>Moore v. Stamps</u>, 507 S.W.2d 939, 950 (Mo. Ct. App. 1974) (due process requires that trial court which granted probation hold final hearing to determine whether probation should be revoked). Because plaintiff received a final revocation hearing, his attempt to distinguish <u>White</u> is unavailing.

In <u>White</u>, the Tenth Circuit considered the issue whether plaintiff suffered an unconstitutional deprivation of his procedural due process rights due to the delay in the revocation hearing. 1999 WL 107106, at *2. This is precisely the issue presently before the Court, and <u>White</u> instructs that prejudice is a necessary element of plaintiff's due process claim.

-16-

satisfied the requirements of the Constitution." <u>White</u>, 1999 WL 107106, at *1 (quoting <u>McNeal</u>, 553 F.2d at 69). Because plaintiff cannot establish that Krumroy's actions violated his due process rights, the Court finds that Krumroy is entitled to summary judgment on the basis of qualified immunity.

### B.   Unreasonable Seizure

Plaintiff claims that the length of his detention violated his right to be free from unreasonable seizure under the Fourth Amendment. The Court is not convinced, however, that this claim falls within the bounds of the Fourth Amendment. In <u>Pierce v. Gilchrist</u>, 359 F.3d 1279 (10th Cir. 2004), the Tenth Circuit stated that an "initial arrest is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause." <u>Id.</u> at 1285-86 (internal citation omitted). The idea that the Court's analysis should "shift" from the Fourth Amendment to the Fourteenth Amendment suggests that violations under those two amendments may not overlap. In other words, it appears that plaintiff may not assert an identical basis for both a Fourth Amendment and Fourteenth Amendment claim.

Here, plaintiff's Fourth Amendment and Fourteenth Amendment claims are predicated on the single argument that defendants detained him for an unreasonable time. Under <u>Morrissey</u>, this claim is clearly a matter of procedural due process within the ambit of the Fourteenth Amendment, which suggests that the claim is not properly considered as an unreasonable seizure under the Fourth Amendment.[19] Plaintiff cites no authority otherwise.

Even if the Court were to consider plaintiff's claim under the Fourth Amendment, Krumroy asserts qualified immunity which plaintiff cannot overcome. The entirety of plaintiff's Fourth

---

[19]      Had plaintiff challenged his initial arrest, such a claim would clearly fall under the Fourth Amendment. As noted above, however, plaintiff has conceded that the initial arrest was valid.

Amendment argument is as follows:

> Plaintiff does not agree that the lack of prejudice is a necessity for a denial of a due process claim. . . . While not conceding this point plaintiff does however reassert that the length of time he was held was unreasonable under the circumstances and clearly this is a violation of other constitutional rights under § 1983, including but not limited to his right to be free of unreasonable seizure under the 4th Amendment.

Plaintiff's Memorandum In Opposition To Defendants State Of Kansas and Krisha Krumroy's Motion For Summary Judgment ("Plaintiff's Memorandum") (Doc. #134-2) at 14.   This undeveloped afterthought is hardly sufficient to meet the burden of establishing that Krumroy's actions violated the Fourth Amendment.  Krumroy is entitled to summary judgment on this claim.

### C.    Negligence

Plaintiff claims that Krumroy negligently failed to communicate with the State of Missouri regarding his detention or to release him after a reasonable time.  Krumroy argues that she is entitled to summary judgment because (1) she owed no duty to plaintiff; (2) she enjoys discretionary immunity under the Kansas Tort Claims Act, K.S.A. § 75-6101 et seq.; and (3) the claim is time-barred. Krumroy's duty argument is dispositive of the claim.

To establish negligence under Kansas law, plaintiff must prove (1) the existence of a duty, (2) defendants' breach of that duty, (3) injury and (4) causation between the breach and the injury. South v. McCarter, 280 Kan. 85, 94, 119 P.3d 1, 8 (2005).  The existence of a duty is a question of law for the Court.  Yount v. Deibert, 282 Kan. 619, 624, 147 P.3d 1065, 1070 (2006).

Krumroy argues that as a law enforcement officer, she owed her duties to the general public rather than to plaintiff.[20]  Generally, the public duty doctrine under Kansas law provides that law

---

[20]    Under Kansas law, Krumroy is a law enforcement officers charged "with a duty to maintain or assert custody or supervision over persons accused or convicted of a crime."  See K.S.A.
(continued...)

enforcement officers owe their duties to the public at large and not to any particular individual.  Mills

v. City of Overland Park, 251 Kan. 434, 446, 837 P.2d 370, 379 (1992).   Under this doctrine,

"[n]egligence liability attaches to an officer only when he or she breaches a specific affirmative duty

owed to a particular person," and "[a]bsent some special relationship with or specific duty owed to an

individual, liability will not lie for damages."  Lamb v. State, 33 Kan. App.2d 843, 849, 109 P.3d 1265,

1270 (2005).

> Kansas law defines the general duties of a parole officer as follows:
>
> Parole officers shall investigate all persons referred to them for investigation by the
> secretary of corrections.  Parole officers shall furnish to each person released under their
> supervision a written statement of the conditions of parole or postrelease supervision and
> shall give instructions regarding these conditions.  Parole officers shall keep informed
> of the conduct and condition of a parolee or inmate on postrelease supervision and use
> all suitable methods to aid, encourage and bring about improvement in the conduct and
> condition of such parolee or inmate or postrelease supervision. Parole officers shall keep
> detailed records of their work and shall make such reports in writing and perform such
> other duties as may be incidental to those above enumerated or as the secretary may
> require.  Parole officers shall coordinate their work with that of social welfare agencies.

K.S.A. § 75-5216.  This statute alone, however, is insufficient to create any special duty on the part of

a parole officer.  See Moss v. Mamalis, 36 Kan. App.2d 151, 160-61, 138 P.3d 380, 387 (2006)

(rejecting argument that special duty arises out of duties described in Section 75-2516).  The Kansas

Supreme Court has recognized that a special duty arises on the part of a law enforcement officer

"(1) where there is an affirmative act by the officer causing injury; [or] (2) when a specific promise or

representation by the officer is made under circumstances creating justifiable reliance."  Dauffenbach

v. City of Wichita, 233 Kan. 1028, 1033, 667 P.2d 380, 385 (1983).  A special duty may also be created

by official policy which removes discretion from an officer's decisionmaking calculus.  See Mills, 251

---

[20](...continued)
§ 22-2202(13).

Kan. at 446-47, 837 P.2d at 379 (finding special duty from police standard operating manual; key is unconditional language such as "will," rather than "may").

Here, the record contains no evidence that Krumroy engaged in any affirmative act which caused plaintiff injury.[21]  Because plaintiff complains of an injury caused by the length of his detention, any specific duty must arise out of some affirmative act which has a causal connection to the length of that detention.   The evidence in this case indicates that authorities continued to detain plaintiff while Krumroy waited for Missouri to respond to her violation report.  At most, Krumroy may have caused plaintiff's continued detention through acts of omission (e.g., failing to contact Missouri more frequently to assess its progress in responding to the violation report), but such omissions do not implicate specific duties which are necessary under Kansas law to sustain a negligence claim against law enforcement officers.[22]  See Moss, 36 Kan. App.2d at 160-61, 138 P.3d at 387 (general duty to supervise parolees or probationers does not create special relationship necessary to sustain negligence claim under Kansas

---

[21]     Dauffenbach recognizes that placing an individual under arrest is an affirmative act which may create a specific duty.  233 Kan. at 1033, 667 P.2d at 385.  Here, Krumroy did not physically arrest plaintiff, but she ordered his arrest on the basis of her judgment that plaintiff had violated his conditions of release.  Assuming this conduct constitutes an affirmative act, the Court notes that plaintiff has conceded the validity of the initial arrest and does not complain of injury arising from that arrest. Because plaintiff's alleged injury arises from an unreasonably long detention – not from his arrest – the issuance of the arrest and detain order is not an affirmative act causing injury sufficient to impose a special duty on Krumroy under Dauffenbach.

[22]     Plaintiff suggests that the second and third arrest and detain orders which Krumroy issued on November 12, 2004 and January 14, 2005, respectively, constitute affirmative acts which may support a special duty.  Plaintiff makes no argument that the orders were invalid, however, and an officer who acts on facially valid paperwork does not undertake any special relationship with a supervised offender.  See Moss, 36 Kan. App.2d at 160-61, 138 P.3d at 387.
    Further, as the Court previously noted, plaintiff was legally detained under the probable cause finding on October 7, 2004.  Therefore, even if the second and third arrest and detain orders were invalid, plaintiff's detention was independently justified and the orders cannot be considered the cause of his injury from the length of detention so as to create a special duty.

law; duty does not extend to investigation of plaintiff's legal claims).  The record also contains no evidence that Krumroy made any specific promise or representation to plaintiff so as to create a special duty.

As noted above, a special duty may also be found in mandatory law enforcement procedures. Here, Krumroy's obligation under the ICAOS was to prepare and deliver to the State of Missouri a report regarding plaintiff's alleged violation.  See ICAOS Rule 4.109(a) ("A receiving state shall notify a sending state of significant violations of conditions of supervision by an offender within 30 calendar days of discovery of the violation.") (emphasis added).  The term "shall" indicates that Krumroy had no discretion whether to prepare and send the violation report.  Under Mills, this affirmative obligation is sufficient to create a special duty.  251 Kan. at 446-47, 837 P.2d at 379 ("will" constitutes order to act, removing officer's discretion and creating special duty).  Although Rule 4.109 may create a special duty, the record is clear that Krumroy fulfilled that duty.  Specifically, plaintiff does not contest that Krumroy sent the State of Missouri her violation report on October 21, 2004, or that the State of Missouri received the violation report on November 8, 2004.  After she prepared and submitted the report, ICAOS rules mandated no further action from Krumroy; instead, they placed the onus on the State of Missouri to respond to the violation report.  See ICAOS Rule 4.109(c) ("The sending state shall respond to a report of a violation made by the receiving state no later than ten business days following receipt by the sending state.").  The record contains no evidence of any other nondiscretionary rule or procedure which governed Krumroy's supervision of plaintiff so as to create a special duty.  Because plaintiff has shown no genuine of material fact whether Krumroy assumed a special duty to prevent his lengthy incarceration through some affirmative act, representation or mandatory policy, the Court finds

that Krumroy is entitled to summary judgment on plaintiff's negligence claim.[23]

## IV.   Plaintiff's Claim Against The State Of Kansas

Plaintiff claims that the State of Kansas (like Krumroy) (1) violated his right to due process under the Fourteenth Amendment by detaining him without a valid warrant or arrest order and without a final probation revocation hearing; (2) violated his right to be free from unreasonable seizure under the Fourth Amendment by detaining him for an unreasonable length of time; and (3) negligently failed to communicate with the State of Missouri regarding his detention.

As to plaintiff's constitutional claims, the State of Kansas argues that it is not a person under Section 1983.[24]   See Williams v. Kansas, 76 Fed. Appx. 278, 279 (10th Cir. 2003) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989)) (State of Kansas not proper defendant under Section 1983).   Plaintiff concedes this point, see Plaintiff's Memorandum (Doc. #134-2) at 10, and the Court therefore finds that the State of Kansas is entitled to summary judgment on plaintiff's Fourth

---

[23]        Plaintiff suggests that if the Court finds no duty on the part of Krumroy, probationers in his position will be left with no option but to file a habeas petition.  This is not necessarily true, as such individuals could assert claims against other parties – such as the Missouri officials in this case – who may have assumed special duties in the course of their employment.

Further, even if it is true that probationers would be left with only the extraordinary remedy of habeas relief, this outcome is not necessarily inconsistent with Kansas law.  See Parker, 247 Kan. at 216, 795 P.2d at 70 ("The only remedy for an unconstitutional delay in a parole revocation hearing is to quash the parole violation warrant and dismiss the parole revocation charges.").

[24]        Section 1983 provides in pertinent part as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Amendment and Fourteenth Amendment claims.

As to plaintiff's negligence claim, the State of Kansas reiterates the argument that it owed no special duty to plaintiff.  Under Kansas law, a government entity "shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state."  K.S.A. § 75-6103.  In negligence actions, the liability of a government entity is controlled by basic tort principles, including the requirement that plaintiff establish a duty on the part of the entity.  See Dunn v. Unified Sch. Dist. No. 367, 30 Kan. App.2d 215, 221, 40 P.3d 315, 320-21 (2002) (applying basic negligence elements in claim against school district).  As discussed above, the Court finds no record evidence which supports a special law enforcement duty owed to plaintiff.  Plaintiff makes no argument why this finding would differ with respect to the State of Kansas, and the Court concludes that, like Krumroy, the State of Kansas owed no special duty to plaintiff regarding the length of his detention.  The State of Kansas is therefore entitled to summary judgment on plaintiff's negligence claim.

**IT IS THEREFORE ORDERED** that the Motion For Summary Judgment (Doc. #128) which the Unified Government and Sheriff Green filed July 30, 2007 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that Defendants State Of Kansas And Krisha Krumroy's Motion For Summary Judgment (Doc. #130) filed July 30, 2007 be and hereby is **SUSTAINED**.

Dated this 12th day of October, 2007 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge

-23-